In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00973-CV

____________


LITZI NICHOLSON, Appellant


V.


MARY SHINN, M.D., Appellee






On Appeal from the 133rd District Court 

Harris County, Texas

Trial Court Cause No. 2006-27688





MEMORANDUM OPINION 


 This is a summary judgment case that arises under the notice provision of the
Medical Liability and Improvement Act, Tex. Civ. Prac. & Rem. Code § 74.051
(Vernon 2005) (MLIA). Appellant, Litzi Nicholson, brings this appeal to challenge
a traditional summary judgment rendered in favor of appellee, Mary Shinn, M.D. on
Nicholson's medical malpractice claim. In two issues, Nicholson contends that (1) 
fact issues remain regarding Dr. Shinn's contention that Nicholson's claim is time
barred and (2) time for discovery was inadequate. We affirm.

Background


 Dr. Shinn performed breast-augmentation surgery on Nicholson in September
2003. When Nicholson was dissatisfied with the results, Dr. Shinn performed a
second surgery on March 12, 2004. Nicholson reported to Dr. Shinn for
postoperative care on March 17, 2004. On May 4, 2006, Nicholson filed her original
petition claiming that Dr. Shinn committed medical malpractice that resulted in
deformation of Nicholson's breasts. Nicholson also claimed that Dr. Shinn failed to
provide or, alternatively, negligently provided postoperative care. 

 Dr. Shinn answered by general denial and also asserted the affirmative defense
that limitations had passed. In her motion for traditional summary judgment, Dr.
Shinn argued that the two-year statute of limitations barred Nicholson's claims as a
matter of law, see Tex. Civ. Prac. & Rem. Code § 74.251(a) (Vernon 2005), and that
limitations were not tolled because Nicholson did not comply with the notice
provision required by Section 74.051(a) of the Remedies Code, see Tex. Civ. Prac.
& Rem. Code § 74.052(c). Dr. Shinn provided affidavit testimony that Nicholson
"had her first post-operative appointment on March 17, 2004," but that Nicholson
"did not return for her second appointment scheduled for a few weeks later" and,
therefore, "the last medical treatment provided" to Nicholson was March 17, 2004. 
Dr. Shinn's affidavit also authenticated and provided a copy of a June 1, 2004 letter
sent to her by Nicholson's counsel.

 In her response, Nicholson argued that uncertainty about the onset date for
limitations created a fact issue that precluded summary judgment, that she had
substantially complied with the notice and medical authorization requirements of the
MLIA, and that the onset date for claims premised on postoperative treatment was
within the two-year statute of limitations. Nicholson also argued that she was "due
a post-operative checkup" by Dr. Shinn, but that the checkup was never scheduled,
"although requested" by Nicholson "up to and including June, 2004." Nicholson
provided affidavit testimony to support that contention. 

Standard of Review


 We review summary judgments de novo and according to well-settled
standards. See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).
We resolve all doubts against the movant and view the evidence in the light that most
favors the nonmovant. Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001). In deciding
whether a disputed issue of material fact issue exists, we take evidence favorable to
the nonmovant as true. Id. 

 A defendant who moves for traditional summary judgment on the plaintiff's
claims must conclusively disprove at least one element of each of the plaintiff's
causes of action. Little v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374, 381 (Tex.
2004). A defendant who moves for traditional summary judgment on an affirmative
defense, however, as here, must conclusively establish all elements of that affirmative
defense. See Chau v. Riddle, 254 S.W.3d 453, 455 (Tex. 2008); Shah, 67 S.W.3d at
842; Alpert v. Gerstner, 232 S.W.3d 117, 132 (Tex. App.--Houston [1st Dist.] 2006,
pet. denied). The nonmovant has no burden to respond to a summary judgment
motion unless the movant conclusively establishes its cause of action or defense. 
M.D. Anderson Hosp. and Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000);
Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989). 

Discussion
 

I. Two-Year Statute of Limitations

 In her first point of error, Nicholson contends that Dr. Shinn failed to establish
her affirmative defense that Nicholson's claims are barred by the two-year statute of
limitations. Nicholson supports this contention by claiming (1) that Dr. Shinn did not
establish when limitations began to run because her negligent postoperative care
continued through 2004 and (2) that Nicholson established that limitations were
tolled. 

 A. Onset Date for Limitations

 The two-year limitations period imposed by Section 74.251 of the Texas Civil
Practice and Remedies Code is measured from one of three dates: (1) occurrence of
the breach or tort, (2) date that the relevant course of treatment was completed, or (3)
last date of the relevant hospitalization. Tex. Civ. Prac. & Rem. Code § 74.251(a);
Shah, 67 S.W.3d at 842-43; Kimball v. Brothers, 741 S.W.2d 370, 372 (Tex. 1987). 
A medical malpractice claimant may not choose from among these the measurement
that most favors her case. Shah, 67 S.W.3d at 841. 

 Nicholson claims that the trial court erred in granting summary judgment
because a fact issue exists as to the onset date for the statute of limitations. 
Specifically, Nicholson argues that she was still under Dr. Shinn's care after the
March 12, 2004 surgery and was anticipating follow-up visits that were never made
due to scheduling problems. Thus, Nicholson argues that the statute of limitations
should be extended to some unspecified time beyond the last date of treatment. 

 To resolve Nicholson's issue, we must first determine whether the date of the
alleged tort is ascertainable. Id.; Winston v. Peterek, 132 S.W.3d 204, 207 (Tex.
App.--Houston [14th Dist.] 2004, pet. denied). If the date is ascertainable,
limitations begin to run on that date, and inquiries into second and third categories
of onset dates are not necessary. Shah, 67 S.W.3d at 841. Here, the dates of Shinn's
alleged negligence are readily ascertainable. If the defendant committed the alleged
tort on an ascertainable date, whether the plaintiff established a course of treatment
is immaterial because limitations begins to run on the ascertainable date. Husain v.
Khatib, 964 S.W.2d 918, 919. (Tex. 1998). If the date the doctor's alleged negligence
took place can be ascertained, then there are no doubts to resolve and we must
measure limitations from that date. Id. 

 Nicholson sought a breast augmentation and other cosmetic surgery from Dr.
Shinn in late 2003. Dr. Shinn performed the procedure in September 2003. 
Nicholson was not satisfied with the appearance of her breasts and obtained a second,
corrective procedure, on March 12, 2004. Nicholson had her first post-operative
appointment with Dr. Shinn on March 17, 2004. The record does not reflect
subsequent appointments. Therefore, any negligence could only have occurred, at the
latest, at the March 17, 2004 appointment. See Husain, 964 S.W.2d at 920 (citing
Bala v. Maxwell, 909 S.W.2d 889, 891-92 (Tex. 1995)).

 Furthermore, it is immaterial whether Nicholson established a relevant course
of treatment because the limitations begin to run on an ascertainable date--March 17,
2004. Because the March 17, 2004 date is ascertainable, there is no fact issue
regarding whether a subsequent course of treatment existed between Dr. Shinn and
Nicholson. Moreover, even were we to assume that no ascertainable date existed in
the instant case, the Texas Supreme Court has held that "while the failure to treat a 
condition may well be negligent, we cannot accept the self-contradictory proposition
that the failure to establish a course of treatment is a course of treatment." Rowntree
v. Hunsucker, 833 S.W.2d 103, 105-06 (Tex. 1992) (quoting Nykorchuck v.
Henriques, 577 N.E.2d 1026, 1029 (N.Y. 1991)). In other words, the scheduling
difficulties for Nicholson's post-operative care do not constitute a course of
treatment, therefore, regardless of whether Dr. Shinn refused to schedule further post-operative care or whether Nicholson failed to appear, Dr. Shinn could not have
breached her duty after March 17, 2004 as she had no opportunity to perform follow-up care.

 For these reasons, we measure the two-year limitations period imposed by
section 74.251by the occurrence of the alleged medical malpractice by Dr. Shinn. 
The last treatment date is ascertainable, namely the postoperative care provided on
March 17, 2004. 

 B. Notice and Tolling Limitations

 The two-year limitations period imposed by section 74.251 can be tolled "to
and including a period of 75 days" if proper notice is given. Tex. Civ. Prac. & Rem.
Code §§ 74.051(c), 74.251(a). Section 74.051(a) lists the notice requirements for a
medical malpractice claim: 

 (a) Any person or his authorized agent asserting a health care liability claim
shall give written notice of such claim by certified mail, return receipt
requested, to each physician or health care provider against whom such
claim is being made at least 60 days before the filing of a suit in any
court of this state based upon a health care liability claim. The notice
must be accompanied by the authorization form for release of protected
health information as required under § 74.052.

 

Tex. Civ. Prac. & Rem. Code § 74.051(a). (1) 

 Section 74.052 prescribes the Authorization Form for Release of Protected
Health Information:

 (a) Notice of a health care claim under Section 74.051 must be accompanied
by a medical authorization in the form specified by this section. Failure
to provide this authorization along with the notice of health care claim
shall abate all further proceedings against the physician or health care
provider receiving the notice until 60 days following receipt by the
physician or health care provider of the required authorization. 


Tex. Civ. Prac. & Rem. Code § 74.052(a). The purpose of the authorization form
is to assist the defendant in facilitating the investigation of the plaintiff's health care
claim and in facilitating the defense of any litigation arising out of the claim. Tex.
Civ. Prac. & Rem. Code § 74.052(c). This provides potential defendants a 60-day
pre-suit window to gather information, determine whether the claims have merit, and
resolve the dispute without the excessive cost of litigation. Schepps v. Presbyterian
Hosp. of Dallas, 652 S.W.2d 934, 938 (Tex. 1983); In re Fontenot, 13 S.W.3d 111,
114 (Tex. App.--Fort Worth 2000, no pet.) (citing De Checa v. Diagnostic Center
Hosp., Inc., 852 S.W.2d 935, 938 (Tex. 1993)). 

 As we have established, the critical date for limitations purposes is March 17,
2004. Nicholson gave notice of the claim on June 1, 2005, and filed suit on May 4,
2006. By sending proper notice of her claim, Nicholson would have stopped the
running of the two-year limitations period for 75 days, at the end of which the statute
resumes running. Husain, 964 S.W.2d at 919; De Checa, 852 S.W.2d at 937-38. 
Thus, the May 4, 2006 suit was timely assuming Nicholson provided proper notice.

 We conclude that the two-year limitations period was not tolled 75 days
because proper notice was not given. Therefore, no fact issue exists and the trial
court did not abuse its discretion in granting Dr. Shinn's motion for summary
judgment. On June 1, 2005, Dr. Shinn received a notice letter from Nicholson's
attorney. The June 1, 2005 notice letter was not accompanied by the medical
authorization form required by statute. Tex. Civ. Prac. & Rem. Code § 74.051(a). 
On June 6, 2005, Nicholson sent Dr. Shinn a "medical authorization release form."
Dr. Shinn contends this document was defective in that "it substantially deviated from
the authorization required by Tex. Civ. Prac. & Rem. Code § 74.051 and contained
in § 74.052 in both form and substance." Nicholson replies that she served Dr.
Shinn's insurance carrier on June 23, 2005 with the "authorization form for release
of protected health information" prescribed by section 74.052. However, because
none of the three forms of notice and authorization provided on June 1, June 6, or
June 23, 2005 comply with the mandatory provisions of sections 74.051 and 74.052,
we hold that notice is not proper, and the statute of limitations was not tolled. Tex.
Civ. Prac. & Rem. Code § 74.051 & 74.052. 

 To resolve whether Nicholson provided proper notice, we must first determine
if sections 74.051 and 74.052 are mandatory or directory. See Butler v. Taylor, 981
S.W.2d 742, 743 (Tex. App.--Houston [1st Dist.] 1998, no pet.). To accomplish this,
we look to Schepps v. Presbyterian Hospital of Dallas, in which the Supreme Court
of Texas utilized principles of statutory construction to analyze the statutory
predecessor of section 74.051(a) in order to determine whether the 60-day notice
provision contained in the statute is mandatory or directory. Schepps, 652 S.W.2d at
936-38. Schepps set forth the general guidelines for statutory construction, noting
that there is no absolute test. Id. at 936 (citing Chisholm v. Bewley Mills, 287 S.W.2d
943 (Tex. 1956)). Therefore, "the fundamental rule is to ascertain and give effect to
the legislative intent." Id. The word "shall" is generally deemed mandatory, but it
is frequently held to be merely directory by looking at the Legislature's intent. Id. 
If the statutory provision goes to the essence of the thing to be done, it is mandatory,
but if an element is only "included for the purpose of promoting the proper, orderly
and prompt conduct of business, [it is] generally regarded as [directory]." Id. In
Schepps, a plaintiff failed to give at least sixty days notice prior to filing suit under
the Act. 652 S.W.2d at 935. After relying on legislative history to support the
conclusion that the Legislature intended the Act's notice provision as a vehicle to
encourage pre-suit negotiations, the Schepps court found the word "shall" to be
mandatory, and held the sixty-day provision compulsory. Id. at 938.

 Violations of mandatory provisions can occasionally result in substantial
compliance when they are regarded as directory because of their purpose. Id. For
instance, in Butler v. Taylor, relied on by Nicholson, the appellant sent notice under
the Act by express mail. 981 S.W.2d at 742-43. Although section 74.051(a) requires
notice to be sent certified mail, return receipt requested, the Butler court found that
the appellant had substantially complied with the notice requirement because "the
technicalities of the method of service are not crucial when the purposes of the notice
statute have been satisfied." Id. at 743-44. 

 Nicholson urges this Court that her substantial compliance with the statute was
sufficient to toll the statute of limitations, citing both Butler and Schepps. We 
disagree. Butler holds that, while mandatory, sending notice via express mail over
certified mail, required by the statute, does not disregard the purpose of the notice
statute--to encourage pre-suit negotiations. Butler, 981 S.W.2d at 743. On the
contrary, failing to include a medical release authorization form belies the purpose
of the notice statute. Similarly, while Schepps held that the Act's sixty-day-notice
period prior to filing suit is mandatory, the court permitted an abatement period of
sixty days as a remedy when a plaintiff fails to give timely notice, reasoning that the
legislature did not intend to bar prosecution completely in such instances. Schepps,
652 S.W.2d at 938. 

 In the instant case, unlike the facts in Schepps and Butler, the notice filed by
Nicholson was defective from the outset. Therefore, the trial court did not err in
holding Nicholson's notice defective because such notice did not meet the mandatory
statutory guidelines set out by sections 74.051(a) and 74.052. See id. The first letter
of notice sent June 1, 2005 is clearly defective because it violates a mandatory
provision--section 74.051 requires that notice "must" be accompanied by the 74.052
medical release authorization form. As previously noted, because the purpose of
74.051 is to encourage pre-suit negotiations and avoid unnecessary litigation, failing
to include the form does not result in substantial compliance. 

 The two subsequent medical authorization forms, sent June 6 and June 23,
2005, are similarly defective because they also do not meet the mandatory statutory
guidelines set out by sections 74.051(a) and 74.052. See id. The medical
authorization release form Nicholson supplemented on June 6, 2005 deviated from
the mandatory provisions of section 74.052. The medical authorization required must
include a form authorizing the physician or other health care provider "to obtain and
disclose . . . the protected health information" and a form for the patient to identify
her treating physicians for the past five years. Tex. Civ. Prac. & Rem. Code §
74.052(c). The June 6, 2005 release neglected to include information on Nicholson's
physicians for the past five years, as directed by section 74.052(c). The medical
authorization form served on Dr. Shinn's insurer on June 23, 2005 was similarly
lacking. There, Nicholson also neglected to complete the section identifying her
treating physicians or the section authorizing the physician or other health care
provider to obtain and disclose her health care information. See id.

 By overlooking these two provisions on both the June 6, 2005 medical
authorization letter and the June 23, 2005 authorization for release, Nicholson failed
to substantially comply with sections 74.051 and 74.052. Nicholson's two forms of
medical authorization did not comport with the Legislature's stated intent of
encouraging pre-suit negotiations and avoiding unnecessary litigation. Specifically,
Nicholson's failure to list her treating physicians for the past five years essentially
rendered Nicholson's authorizations meaningless because such an omission
discouraged defendants from undertaking an investigation to evaluate Nicholson's
claim. Thus, both the June 6 and June 23 authorizations lacked crucial information
necessary for the promotion of "the proper, orderly and prompt conduct of business." 
Schepps, 652 S.W.2d at 936. 

 Additionally, we note that Nicholson served the June 23, 2005 authorization
form only on Dr. Shinn's insurance provider, and not on Dr. Shinn or her attorneys,
as required by section 74.052(a). Again, to determine whether the serving of notice
on Dr. Shinn's insurance provider is equivalent to serving the notice on Dr. Shinn or
counsel, we construe the statute in light of the legislature's intent. See McIntyre v.
Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). The plain language expressly requires
the claimant to "give written notice of such claim . . . to each physician or health care
provider." Tex. Civ. Prac. & Rem. Code § 74.051(a). When the plain language of
a section requires the claimant to serve the defendant health care provider or his
attorney, filing the report with the insurance carrier does not constitute proper notice. 
See Poland v. Ott, 278 S.W.3d 39, 42-44 (Tex. App.--Houston [1st Dist.] 2008, pet.
ref'd); Quint v. Alexander, No. 03-04-00819-CV, 2005 WL 2805576, at *2-3 (Tex.
App.--Austin 2005, no pet.) (mem. op.). Thus, Nicholson's filing of the
authorization form with Dr. Shinn's insurance provider did not satisfy the plain
language of section 74.052(a)'s notice requirement. 

 For the foregoing reasons, the trial court did not err in granting appellee's
motion for summary judgment because no fact issue exists as to whether the two-year
statute of limitations should have been tolled for a period of 75 days. See Tex. Civ.
Prac. & Rem. Code §§ 74.051(c), 74.251(a). Appellant's first point of error is
overruled.


II. Adequate Time for Discovery

 In her second point of error, Nicholson contends that summary judgment was
improper because the trial court granted the motion before Nicholson could conduct
discovery. Nicholson also argues that a continuance should have been granted to
permit discovery of possible negligence in Shinn's post-operative follow-up care. 

 We will first examine Nicholson's argument that the trial court erroneously
denied her motion for continuance. There are three relevant factors used in deciding
whether the trial court abused its discretion in denying a ruling on a Rule 166a(g)
motion for continuance. Laughlin v. Bergman, 962 S.W.2d 64, 65 (Tex.
App.--Houston [1st Dist.] 1997, writ denied). These factors include: (1) the length
of time the case had been on file, (2) the materiality of the discovery sought, and (3)
due diligence of counsel. Id. at 65-66; Patrick v. Howard, 904 S.W.2d 941, 946
(Tex. App.--Austin 1995, no writ); Levinthal v. Kelsey-Seybold Clinic, P.A., 902
S.W.2d 508, 510 (Tex. App.--Houston [1st Dist.] 1994, no writ). 

 To resolve Nicholson's issue, we must look collectively at the length of time
the case had been on file, the materiality of the discovery sought, and the due
diligence of counsel. Laughlin, 962 S.W.2d at 65-66; Patrick, 904 S.W.2d at 946;
Levinthal, 902 S.W.2d at 510. In Levinthal v. Kelsey-Seybold Clinic, "[t]he case had
been on file for only three months at the time summary judgment was granted." Id.
at 510. While the plaintiff was the party moving for a continuance, the Court found
a plaintiff has "the right to engage in necessary discovery before summary judgment
is granted" because of the importance of materiality and the belief that discovery
would prove the co-conspiracy. 902 S.W.2d at 511. (2) The plaintiff was able to prove
due diligence in that "[t]here was nothing more [he] could have done to obtain the
discovery materials prior to the summary judgment hearing." Id. at 512. It was not
the three-month period alone, but also the materiality of the discovery sought and the
due diligence employed by the plaintiff, that the Court used to determine that the trial
court had abused its discretion by refusing to continue the discovery. Id. 

 The materiality of the information is a primary factor in determining whether
the denial of the motion for continuance of discovery is proper. See Laughlin, 962
S.W.2d at 66. In Laughlin v. Bergman, the Court held the ability to depose the
defendant and review files is absolutely critical to a legal malpractice case. Id. 
Making numerous attempts to schedule depositions while the defendants are
continuously unavailable, constitutes due diligence. Id. Accordingly, Laughlin ruled
that "it was an abuse of discretion for the trial court to have denied the motion for
continuance." Id. 

 Nicholson asserts that the "trial court should have granted [her] motion for
continuance because the case had been on file for only five . . . months when [Dr.
Shinn] filed [her] summary judgment motion and no discovery had been completed
although discovery was sent by [Nicholson]." While Levinthal indicates that three
months on file can be ruled too brief a time to allow for summary judgment, it is not
a bright-line rule and is factored in with the materiality of the requested information
and due diligence of the requesting party's counsel. The instant case is
distinguishable from Levinthal. Dr. Shinn filed her motion for summary judgment on
September 5, 2006, more than five months after Nicholson filed the case on May 4,
2006. This is two months longer than the Levinthal case. 

 Additionally, Nicholson asserts the trial court erred in granting summary
judgment because Dr. Shinn did not establish her affirmative defense of limitations
bar as a matter of law. We disagree because, even if Nicholson is correct that the
discovery rule applies, and even if the evidence raises a fact issue about the course
of treatment past the last surgical treatment date, the fact remains that the last possible
moment the alleged malpractice could have occurred was March 17, 2004. Nicholson
did not file suit until May 4, 2006, more than two years after her discovery of the
alleged negligence. Nicholson's suit against Dr. Shinn is therefore barred by the two-year statute of limitations as a matter of law. Unlike Levinthal, no amount of
discovery would change this limitations defense; the information sought to be
discoverable was immaterial. 

 Nicholson contends that Dr. Shinn's "answers to . . . discovery were critical on
the issue of whether [Nicholson] continued a course of treatment past the last surgical
treatment date." However, unlike Laughlin v. Bergman, which held the ability to
review files absolutely critical to a legal malpractice case, the information Nicholson
seeks is immaterial because, even if there was a negligent course of treatment, it
would not change the last ascertainable date of March, 17, 2004. Even if a further
date was discovered, March 17, 2004 begins the statute of limitations because it is the
last treatment between Dr. Shinn and Nicholson. 

 When discovery is immaterial to the issue presented in a motion for summary
judgment and, as such, will not raise a fact issue concerning a defendant's affirmative
defense, it is not error for a trial court to render summary judgment without allowing
discovery to proceed. See Patrick, 904 S.W.2d at 946. Res judicata entitles a
defendant to summary judgment as a matter of law when discovery would not raise
a fact issue concerning the affirmative defense. Goggin v. Grimes, 969 S.W.2d 135,
137-38 (Tex. App.--Houston [14th Dist.] 1998, no pet.).

 In Patrick v. Howard, the plaintiff claimed that the trial court erred in denying 
his motion for continuance because "discovery was material [and] would yield
evidence to support the applicability of the discovery rule and fraudulent
concealment." 904 S.W.2d at 946. However, the court concluded that no additional
amount of discovery could add to the plaintiff's argument "because as a matter of law,
neither of [the] doctrines applie[d]." Id. Similarly, we conclude that the time for
discovery in the instant case was adequate and the three relevant factors indicate no
abuse of discretion. 

 Like Patrick, no additional amount of evidence could add to the appellant's
argument, and therefore, discovery was immaterial to the issue presented in the
motion for summary judgment. In examining the five-month time period that the case
was on file, the immateriality of the claim, and the fact that there were no allegations
of failure of due diligence by counsel, we hold that time for discovery was adequate
and the trial court did not abuse its discretion in granting summary judgment. 
Appellant's second point of error is overruled. 

III. Nicholson's Affidavit

 In a cross-point of error, Dr. Shinn objects to Nicholson's affidavit alleging
that Dr. Shinn's office failed to schedule follow-up care. Specifically, Dr. Shinn
asserts that Nicholson's affidavit is: (1) conclusory, (2) based upon the beliefs and
opinions of Nicholson and not on personal knowledge, (3) not direct and unequivocal,
(4) not free from contradictions, (5) not readily controvertible, and (6) relies on
hearsay statements. 

 Based on our disposition of appellant's second point of error, it is unnecessary
to examine whether Nicholson's affidavit constitutes competent summary judgment
proof. Therefore, we decline to do so.

Conclusion


 For the foregoing reasons, we affirm the judgment of the trial court. 





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.



1. The malpractice statute was expanded in 2003 to include section 74.052, which
prescribes the form of authorization. Tex. Civ. Prac. & Rem. Code § 74.052.
2. A significant distinction exists between a plaintiff filing a motion for summary
judgment and a defendant filing the motion. Verkin v. Southwest Ctr. One, Ltd., 784
S.W.2d 92, 95-96 (Tex. App.--Houston [1st Dist.] 1989, writ denied). Courts "can
presume a plaintiff has investigated his own case[,]" but courts "cannot make the
same assumption about a defendant." Id.